**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT SUAREZ, et al., | : | |
| | : | Civil Action No. 06-2782 (JBS) |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| A1, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

ROBERT SUAREZ, Plaintiff pro se
#49653/211137B

ROBERT FRIEDLAND, Plaintiff pro se
#547744/731083B

EUGENE LUCENTE, Plaintiff pro se
#29734/988196A

Mid State Correctional Facility
P.O. Box 866, Range Road
Wrightstown, New Jersey 08562

**SIMANDLE**, District Judge

Plaintiffs, Robert Suarez, Robert Friedland, and Eugene Lucente, currently confined at the Mid State Correctional Facility ("MSCF") in Wrightstown, New Jersey, at the time they submitted this Complaint for filing, have submitted this class action lawsuit against numerous federal and state government officials pursuant to 28 U.S.C. § 1346, 28 U.S.C. § 1343, and 42 U.S.C. § 1983, and have asked the Court to allow them to proceed

in forma pauperis under 28 U.S.C. § 1915.[1]  This requires the
Court to determine whether Fed.R.Civ.P. 20 authorizes the joinder
of these claims and plaintiffs and, if so, how to assess the
filing fee required under 28 U.S.C. § 1915(b).

The Court must also determine whether class certification is
permissible under Fed.R.Civ.P. 23.  Plaintiffs also filed an
application for emergent injunctive relief, which will be denied
at this time.

## I.  BACKGROUND

Plaintiffs bring this lawsuit as a class action, naming five
separate classes of plaintiffs.  Class A includes the named
plaintiffs, Suarez, Friedland, and Lucente, who are presently
incarcerated at MSCF.  Class B potentially includes all inmates,
past and present, confined at MSCF.  Class C potentially includes
all New Jersey Department of Corrections ("DOC") personnel
employed at MSCF.  Classes D and E potentially include all
civilian employees engaged in activity at MSCF and all John/Jane
Does persons who may have come into contact or were exposed to
contaminants at MSCF.  (Complaint, Caption, and ¶¶ 7-13).

Plaintiffs name the following federal government officials
as defendants: President George W. Bush; Secretary of Defense
Donald H. Rumsfeld; Secretary of the Army Francis J. Harvey; Lt.

---

[1]  One application to proceed in forma pauperis was
submitted by plaintiff Robert Suarez ("Suarez") only.

General Carl A. Strock, U.S. Army Corps of Engineers; Colonel R. David McNeil, Installation Commander at the Fort Dix Headquarters; Colonel Frederick Martin, Commander of the 305th Battalion at McGuire Air Force Base; Boeing Michigan Aeronautical Research; Michael O. Leavitt, U.S. Department of Health and Human Services; U.S. Attorney General Alberto R. Gonzales; Acting Assistant Administrator Thomas K. Skinner, U.S. Office of Enforcement and Compliance; Commissioner Stephen L. Johnson, U.S. Environmental Protection Agency ("EPA"); Acting Administrator, U.S. Office of Prevention of Pesticides and Toxic Substances; Benjamin Grumbles, U.S. Office of Water; John T. Conway, Chairman of the Defense Nuclear Safety Board; Nils J. Diez, Chairman of the Nuclear Regulatory Commission; Secretary Samuel W. Bodman, Department of Energy; Jeffrey R. Holmstead, Office of Air and Radiation; Harley G. Lappin, Director of the Bureau of Prisons; and the Federal Ombudsman's Office.  (Compl., Caption, and "Defendants" section).

Plaintiffs also name the following state government officials as defendants in this matter: Governor Jon S. Corzine; George W. Hayman, Acting Commissioner of the NJDOC; James Barber, NJDOC Director; John Robertshaw, Administrator at MSCF; Robert Brumbaugh, Chief at MSCF; Bradley M. Campbell, Commissioner of N.J. Department of Environmental Protection ("NJDEP"); Lawrence McGeorge, NJDEP Administrator of Water Monitoring & Standards;

James Hamilton, NJDEP Administrator of Compliance and
Enforcement; Narinder Ahuja, NJDEP Director of Water Quality;
William O'Sullivan, NJDEP Director of Air Quality; Jill Lopoti,
NJDEP Ass't. Director of Radiation Protection & Release; Thomas
J. Cozzi, NJDEP Director of Site Remediation and Waste
Management; Norine Binder, NJDEP Director of Solid & Hazardous
Waste Management; Fred Martin Jacobs, Commissioner of N.J.
Department of Health; Margaret Lebak, State Ombudsmann
representative at MSCF. (Id.).

Finally, plaintiffs name the following local government
officials as defendants: Thomas E. Harper, Mayor of Wrightstown;
Brian Sperling, Operations Manager at Wrightstown Municipal
Utility Authority; and Sharon Atkinson, Mayor of Cookstown.
(Id.).

The Complaint states that all of these defendants have
violated plaintiffs' rights under federal and state regulations,
and the Constitutions of the United States and the State of New
Jersey. (Compl., ¶ 14). In particular, plaintiffs contend they
"have been unknowingly subjected to ingest contaminated water and
air on a daily basis, causing the plaintiffs severe risk to
health in violation of the Eighth Amendment to the United States
Constitution." (Compl., ¶ 15). The Complaint further alleges
that the defendants, acting in their official capacity,
"purposefully, knowingly, willfully, and/or recklessly subjected

plaintiffs against their knowledge or will, to remain in contact with substances deemed hazardous to human health and well being through pathways including but not limited to: Ingestion of contaminated water, dermal contact and inhalation of radiologically-contaminated soil and air," and have been found in continuous violation by various federal, state and local monitoring departments.  (Compl., ¶ 2).  Plaintiffs allege that the contaminants[2] at MSCF cause the following ill health effects: cardiovascular or blood toxicity, cancer, developmental toxicity, neuro toxicity; reproductive toxicity; and respiratory toxicity. (Compl., ¶ 3).

The Complaint alleges that, in 1982, the NJDOC leased the property on which MSCF is situated.  Historically, the property was known as the Boeing Michigan Aeronautical Research Site, where an explosion and fire occurred on June 7, 1960.  (Compl., ¶ 15).  Plaintiffs allege that they have been forced to ingest brown, foul smelling and foul tasting water, and have been denied daily hot showers.  The MSCF staff and officers do not use the contaminated water; they have access to water coolers and bottled

---

[2]  The contaminants allegedly affecting the inmates at MSCF are: weapons grade plutonium, unexploded ordnance/ordnance fragments and radionuclide, heavy metals, radon, petroleum, oil, lubricants, sludge, fecal waste, paints and thinners, pesticides, chlorinated solvents, lead, aluminum, barium, manganese, magnesium, nitrate and nitrite, nitrate silver, sulfate, nitrate sulfate, sprawl and urban pollutants, water treatment and distribution byproducts, chloroform, bromoform, bromodichloromethate, and dibromochloromethane.  (Compl., ¶ 4).

water, unlike the inmate population.  Plaintiffs assert that these conditions pose a serious health risk to the inmates at MSCF.[3]  (Compl., ¶ 15).

Plaintiffs further state that these issues concerning the contamination of the water and air quality have been brought to the attention of the prison administrators at MSCF through the Inmates Liaison Committee ("ILC") at MSCF.  The administrators have "refused to inform the [inmate] population or correct the problem" since 2002.  The ILC has attempted to resolve the issue with the administrators at MSCF with the NJ Ombudsman representative present.  There has been no adequate remedy afforded the plaintiffs and other inmates despite the efforts to resolve the problem administratively.

The Complaint seeks immediate injunctive relief, namely the "immediate availability of sanitary potable drinking and bathing water until tests are performed showing the condition and safety of the water."  Plaintiffs also ask that medical attention be provided to inmates at no cost.  Finally, the Complaint seeks the immediate closure of MSCF.  There are no requests for money damages.

---

[3]  Plaintiffs also allege that, from February 13 through 16, 2004, as well as other occasions, the entire prison population at MSCF was without water because the water quality was unsafe for consumption.  During these times, they were restricted from taking showers or washing their faces.  Bottled water was brought in for drinking consumption only, but in limited supply, for these short periods of time.

II. <u>ANALYSIS</u>

A.  <u>Class Certification</u>

Plaintiff, Suarez purports to bring this lawsuit as a class action on behalf of all inmates and personnel at MSCF.  Pursuant to Fed.R.Civ.P. 23(a)(4), a class action can only be maintained if the class representative "will fairly and adequately protect the interests of the class."  When confronting a request for class certification from a <u>pro</u> <u>se</u> litigant, however, courts have found that <u>pro</u> <u>se</u> plaintiffs generally cannot represent and protect the interests of the class fairly and adequately.  <u>See</u> <u>Cahn v. U.S.</u>, 269 F. Supp.2d 537, 547 (D.N.J. 2003); <u>Caputo v. Fauver</u>, 800 F. Supp. 168, 170 (D.N.J. 1992), <u>aff'd</u>, 995 F.2d 216 (3d Cir. 1993).

Here, the lead plaintiff, Suarez, is a <u>pro</u> <u>se</u> prisoner without formal training in the law.  Thus, Suarez would not be able to represent the interests of the class and maintain this suit as a class action.  <u>Cahn</u>, 269 F. Supp.2d at 547; <u>Krebs v. Rutgers</u>, 797 F. Supp. 1246, 1261 (D.N.J. 1992)(denying class certification to <u>pro</u> <u>se</u> plaintiffs without sufficient legal education).  Therefore, class certification will be denied.

B.  <u>Joinder and § 1915(b) Filing Fee Assessment Issue</u>

Title 28 U.S.C. § 1915 governs proceedings <u>in</u> <u>forma</u> <u>pauperis</u> and imposes special limitations with respect to <u>in</u> <u>forma</u> <u>pauperis</u> actions brought by prisoners.  Rule 20 governs permissive joinder

7

of parties and provides, in pertinent part, that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."

Two Circuit Courts of Appeals have analyzed the interrelationship of § 1915 and Rule 20. In <u>Hubbard v. Haley</u>, 262 F.3d 1194 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 534 U.S. 1136 (2002), the Court of Appeals for the Eleventh Circuit concluded that the language of § 1915(b)(1), that "the prisoner shall be required to pay the full amount of a filing fee," requires each prisoner to bring a separate suit and, to the extent that statutory language actually conflicts with Rule 20, the statute repeals the rule.

The Court of Appeals for the Seventh Circuit, however, found no irreconcilable conflict between § 1915(b)(1) and Rule 20 and held that district courts must accept complaints filed by multiple prisoners if the criteria of permissive joinder are satisfied. <u>Boriboune v. Berge</u>, 391 F.3d 852 (7th Cir. 2004). Nevertheless, the Seventh Circuit held that each prisoner joining in a multiple-prisoner civil action must pay the full filing fee in order to comply with the clear language of § 1915(b)(1) and to

satisfy the financial incentive of the statute to deter frivolous prisoner actions.  391 F.3d at 855-56.

Whether or not there is an inherent conflict between § 1915(b) and Rule 20, at least two district courts have found that the impracticalities inherent in multiple-prisoner litigation militate against the permissive joinder allowed by Rule 20.  See Wasko v. Allen County Jail, 2006 WL 978956 (N.D. Ind. 2006); Swenson v. MacDonald, 2006 WL 240233 (D. Mont. 2006). Among the difficulties noted by these courts are the need for each plaintiff to sign pleadings, and the consequent possibilities that documents may be changed as they are circulated or that prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation.  These two district courts have also noted that jail populations are notably transitory, making joint litigation difficult.  A final consideration for the District Court for the District of Montana was the possibility that "coercion, subtle or not, frequently plays a role in relations between inmates." Swenson, 2006 WL 240233, *4.

While this Court finds the reasoning of the above district courts to be persuasive in cases where the prisoners' individual circumstances make joint litigation exceptionally difficult, this action is not that type of case.  The three plaintiffs seek one remedy, which would apply to each of them in the same manner.

They seek injunctive relief to have defendants provide them, and all inmates in general at MSCF, with a potable water supply. Under these circumstances, this Court finds, at least at this early stage of the case, that permissive joinder does not appear to be impracticable. Furthermore, joinder of their claims for potable water at MSCF promotes judicial economy. It is likely that the claims would have been consolidated if the three plaintiffs had filed their claims separately in the first place. Therefore, the three plaintiffs may join in this one action.

However, only plaintiff Suarez has submitted a complete IFP application, and Suarez's application will be granted. The other named plaintiffs, Friedland and Lucente, have not submitted any IFP application, nor have they paid the $350.00 filing fee. As each prisoner joining in a multiple-prisoner civil action must pay the full filing fee in order to comply with the clear language of § 1915(b)(1) and to satisfy the financial incentive of the statute to deter frivolous prisoner actions, see Boriboune, 391 F.3d at 855-56, this Court will direct the Clerk to provide plaintiffs, Friedland and Lucente, with IFP applications and these plaintiffs will be allowed to submit their complete IFP applications, with their respective six-month prison account statements, within 30 days; otherwise, plaintiffs Friedland and Lucente will be deemed withdrawn from the Complaint.

C.   Standards for a Sua Sponte Dismissal

     The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

     In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

     A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the

11

former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro</u> <u>se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Alston v. Parker</u>, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

D.  Claims Against the Federal Defendants

     Suarez names 18 separate federal defendants in his
Complaint, alleging that they were acting in their official
capacities.  The 18 named federal defendants are:  President
George W. Bush; Secretary of Defense Donald H. Rumsfeld;
Secretary of the Army Francis J. Harvey; Lt. General Carl A.
Strock, U.S. Army Corps of Engineers; Colonel R. David McNeil,
Installation Commander at the Fort Dix Headquarters; Colonel
Frederick Martin, Commander of the 305th Battalion at McGuire Air
Force Base; Boeing Michigan Aeronautical Research; Michael O.
Leavitt, U.S. Department of Health and Human Services; U.S.
Attorney General Alberto R. Gonzales; Acting Assistant
Administrator Thomas K. Skinner, U.S. Office of Enforcement and
Compliance; Commissioner Stephen L. Johnson, U.S. Environmental
Protection Agency ("EPA"); Acting Administrator, U.S. Office of
Prevention of Pesticides and Toxic Substances; Benjamin Grumbles,
U.S. Office of Water; John T. Conway, Chairman of the Defense
Nuclear Safety Board; Nils J. Diez, Chairman of the Nuclear
Regulatory Commission; Secretary Samuel W. Bodman, Department of
Energy; Jeffrey R. Holmstead, Office of Air and Radiation; Harley
G. Lappin, Director of the Bureau of Prisons; and the Federal
Ombudsman's Office.  (Compl., Caption, and "Defendants" section).
These defendants are all supervisory officials and there are no
allegations of their personal involvement in the Eighth Amendment

13

violations alleged by plaintiffs.  Plaintiffs allege that the deprivation of potable water at MSCF constitutes a violation of their Eighth Amendment right against cruel and unusual punishment.  The Complaint asserts jurisdiction against these federal defendants under 28 U.S.C. § 1346 and 42 U.S.C. § 1983.

1.  *Section 1983 Claim*

Section 1983 applies to state actors, not federal officials. The federal counterpart to Section 1983 claims in this instance would be an action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  In Bivens, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.  In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.[4] The Supreme Court has also implied Bivens damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979).

---

[4]  Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights.  Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049 (2005).  Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits.  Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987)).

In order to state a claim under Bivens, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  See Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).  Here, plaintiffs are not seeking to recover money damages from these federal officials, although they do ask that inmates be provided with medical testing of plaintiffs' choosing.  Thus, the Complaint seeks injunctive relief compelling action by these federal defendants to provide a remedy.

Anytime a suit is brought against an officer of the federal government in which the relief sought is the prevention or

discontinuance of an alleged wrong, there is a concern that the compulsion the court is asked to impose is actually compulsion against the sovereign, the United States Government.  "If it is, then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction." Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687 (1949)(holding that request for declaratory and injunctive relief against the government based on the actions of individual defendant officers was an action against the United States).  An action is against the government "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Dugan v. Rank, 372 U.S. 609, 620 (1963).  The issue here, then, is whether the injunctive relief sought by the state inmate plaintiffs would result in compulsion against the Government.  If it would, then this Court has no jurisdiction to hear the claim and plaintiffs' claims for injunctive relief (to immediately provide inmates with potable drinking water, to immediately provide inmates access to free medical attention, and to immediately close MSCF) against these federal officer defendants in their official capacities must be dismissed.

16

Here, any <u>Bivens</u>' claims asserting Eighth Amendment violations by these federal defendants in their official capacities must be dismissed on the basis of sovereign immunity because the Complaint seeks to compel the Government to act to remedy the plaintiffs' situation.

2. *Section 1346 Claim*

Next, plaintiffs assert jurisdiction under 28 U.S.C. § 1346. Title 28 of the United States Code, Section 1346 provides that federal district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, for civil actions asserted against the United States, not exceeding $10,000 in amount, based on the Constitution or federal statute or regulation, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C. § 1346(a)(2). For the reasons stated above, the Complaint against the named federal officers in their official capacity, seeking injunctive relief, must be dismissed on the basis of sovereign immunity.

Finally, the Court notes that the Complaint fails to allege any facts against these federal defendants to show that they actively participated in, had knowledge of, or acquiesced in the alleged contamination of the water being provided to MSCF state inmates. Moreover, none of these federal defendants are involved in the provision of water to state inmates confined at the state prison facility MSCF, nor are they involved in the decisions

17

affecting the provision of water to inmates at MSCF.  Therefore the Complaint may be dismissed alternatively against these federal defendants for failure to state a claim upon which relief may be granted.

E.   <u>Claims Against the State Defendants</u>

The Complaint also asserts that the state defendants violated plaintiffs' Eighth Amendment rights and brings this action pursuant to 42 U.S.C. § 1983.  The named state defendants are:  Governor Jon S. Corzine; George W. Hayman, Acting Commissioner of the NJDOC; James Barber, NJDOC Director; John Robertshaw, Administrator at MSCF; Robert Brumbaugh, Chief at MSCF; Bradley M. Campbell, Commissioner of N.J. Department of Environmental Protection ("NJDEP"); Lawrence McGeorge, NJDEP Administrator of Water Monitoring & Standards; James Hamilton, NJDEP Administrator of Compliance and Enforcement; Narinder Ahuja, NJDEP Director of Water Quality; William O'Sullivan, NJDEP Director of Air Quality; Jill Lopoti, NJDEP Ass't. Director of Radiation Protection & Release; Thomas J. Cozzi, NJDEP Director of Site Remediation and Waste Management; Norine Binder, NJDEP Director of Solid & Hazardous Waste Management; Fred Martin Jacobs, Commissioner of N.J. Department of Health; Margaret Lebak, State Ombudsmann representative at MSCF.

Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State

or Territory ... subjects, or causes to be subjected,
any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other
proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law. West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994). There is no question that the named defendants in this
instance are state actors for purposes of § 1983 liability.

However, the Complaint does not allege any facts to
demonstrate the personal involvement of many of the named state
defendants in the alleged Eighth Amendment violation in providing
unsuitable and unsafe water to inmates at MSCF. "A defendant in
a civil rights action must have personal involvement in the
alleged wrongs, liability cannot be predicated solely on the
operation of respondeat superior. Personal involvement can be
shown through allegations of personal direction or of actual
knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d
1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson
v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997);
Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

19

For this reason, the Court will dismiss the Complaint in its entirety, as against the following state defendants for failure to state a claim:  Governor Jon S. Corzine; Bradley M. Campbell, Commissioner of N.J. Department of Environmental Protection ("NJDEP"); Lawrence McGeorge, NJDEP Administrator of Water Monitoring & Standards; James Hamilton, NJDEP Administrator of Compliance and Enforcement; Narinder Ahuja, NJDEP Director of Water Quality; William O'Sullivan, NJDEP Director of Air Quality; Jill Lopoti, NJDEP Ass't. Director of Radiation Protection & Release; Thomas J. Cozzi, NJDEP Director of Site Remediation and Waste Management; Norine Binder, NJDEP Director of Solid & Hazardous Waste Management; and Fred Martin Jacobs, Commissioner of N.J. Department of Health.

The Court will allow the Complaint to proceed as to the remaining state defendants, George W. Hayman, Acting Commissioner of the NJDOC; James Barber, NJDOC Director; John Robertshaw, Administrator at MSCF; Robert Brumbaugh, Chief at MSCF; Margaret Lebak, State Ombudsmann representative at MSCF, since the allegations of the Complaint, if true, may demonstrate that these defendants were directly involved in, and/or were aware of, the decisions regarding the provision of contaminated water to the MSCF inmates.[5]

---

[5]  The conditions under which inmates are confined are subject to scrutiny under the Eighth Amendment, which proscribes against cruel and unusual punishments.  Helling v. McKinney, 509

F.   Local Government Defendants

Finally, the Complaint asserts a § 1983 claim against the

following local government officials:  Thomas E. Harper, Mayor of

---

U.S. 25, 31-32 (1993).  To state a conditions-of-confinement claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation."  Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  An inmate may satisfy this objective component if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48.

Here, water that is suitable for drinking and bathing is undeniably one of "life's necessities".  If the allegations asserted by plaintiffs in this Complaint are true, then the denial of potable water would be objectively sufficiently serious to raise the prospect of a constitutional violation under the Eighth Amendment.

Under the subjective component, plaintiffs must show that the remaining defendants acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).  Here, there are allegations that the remaining defendants have been aware of the problems with the drinking water and have not acted to supply the inmates with potable water, despite the provision of safe drinking water to MSCF personnel.  These allegations, if true, may be sufficient to demonstrate deliberate indifference.

Wrightstown; Brian Sperling, Operations Manager at Wrightstown
Municipal Utility Authority; and Sharon Atkinson, Mayor of
Cookstown.  The Complaint generally alleges that these defendants
violated the inmates' Eighth Amendment rights by providing unsafe
drinking water to the inmates at MSCF.

Local government units and supervisors are not liable under
§ 1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.
New York City Department of Social Services, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); Natale v.
Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d
Cir. 2003).  As stated earlier, in a § 1983 action, supervisory
officials must have personal involvement in the alleged wrongs
because liability cannot be predicated solely on the operation of
respondeat superior.  Rode, 845 F.2d at 1207 (3d Cir. 1988)
(citations omitted).  Accord Robinson, 120 F.3d at 1293-96.

To establish municipal liability under § 1983, "a
plaintiff must show that an official who has the power to make
policy is responsible for either the affirmative proclamation of
a policy or acquiescence in a well-settled custom." Bielevicz v.
Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd.

22

Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."  [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a local government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Here, there are no allegations to show that these municipal defendants were the moving force behind plaintiffs' injuries. The Complaint fails to allege any policy, custom, rule, edict, or

other municipal action by these municipal defendants relating to providing unsafe water to MSCF inmates or refusing to provide potable water for the inmates' use. Therefore, the Complaint will be dismissed in its entirety as against these municipal defendants.

The dismissal of the Complaint as to these municipal defendants will be without prejudice to plaintiffs' rights to seek to cure these pleading defects by providing more specific allegations in a proposed Amended Complaint in a motion filed under Rule 15(a), Fed. R. Civ. P. Any pleading must be sufficient to put the defendant on notice as to (a) what the defendant allegedly did; (b) when, (c) which legal duty owed to the plaintiff was violated, and (d) what harm was suffered or threatened to the plaintiff. If municipal liability is alleged under Section 1983, it must be pled with enough specificity to satisfy the legal standards discussed in this part above.

G.  Request for Emergent Relief

Plaintiffs also filed an application seeking emergent injunctive relief. Namely, plaintiffs ask that defendants be directed not to place plaintiffs in protective custody or to subject plaintiffs to harassment. Plaintiffs also ask that defendants be directed to keep the inmate names confidential, and that all correspondence be delivered and opened in the plaintiffs' presence. Finally, plaintiffs seek an injunction

24

directing defendants to supply inmates with suitable drinking water immediately, to provide inmates with medical examinations by physicians of the inmates' choice, and the immediate closure of MSCF.

To secure the extraordinary relief of a preliminary injunction, plaintiffs must demonstrate that "(1) [they are] likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendant[s]; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998), cert. denied, 526 U.S. 1130 (1999)(as to a preliminary injunction); see also Ballas v. Tedesco, 41 F. Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order).  A plaintiff must establish that all four factors favor preliminary relief.  Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990). The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction.  See University of Texas v. Camenisch, 451 U.S. 390, 392 (1981).

Here, plaintiffs rely on their original Complaint with respect to this application for injunctive/emergent relief. Having thoroughly reviewed the Complaint, and plaintiffs'

25

application for relief, pursuant to Fed.R.Civ.P. 78, the Court
finds that plaintiffs are not entitled to injunctive relief at
this time, for the following reasons:

1. *Likelihood of Success on the Merits*

As set forth in this Opinion at footnote 5, plaintiffs may
be able to establish a facially cognizable claims with respect to
alleged Eighth Amendment violation by the remaining defendants in
failing to supply the inmates with safe drinking water,
sufficient to allow the Complaint to proceed past the sua sponte
screening stage under 28 U.S.C. §§ 1915(e)(2) and 1915A.  This
determination, at this juncture, and without the Court having the
benefit of the adversary process, is adequate to show a
likelihood of success on the merits of these claims.

2. *Irreparable Harm*

However, the Court is not persuaded at this juncture that plaintiffs have shown irreparable harm sufficient to allow for emergent relief.  Plaintiffs allege no actual injury or medical problems related to their use of the allegedly contaminated water.  The mere allegations, for instance, that radionuclides have been detected in the drinking water, without quantification of the concentration and duration of exposure, does not demonstrate a real prospect of danger to health as measured by the scientific guidelines established by the EPA and NJDEP.  See NJDEP v. GEMS, Inc., 2005 WL 1129763 (D.N.J. 2005).  Furthermore, plaintiffs have admitted that on the occasions that the drinking water had tested unsafe for consumption, bottled water was provided to them.  Thus, while the Court has determined that a facially cognizable claim may be established based on the allegations, if true, of the Complaint, there are insufficient facts to show that any of the plaintiffs have suffered, or will suffer in the immediate future, any irreparable harm.

3. *Compelling State Interest*

Under this prong, the Court must balance the equities and harm.  It is certainly a compelling state interest to provide inmates with potable water while they are incarcerated.  However, the immediate closure of a prison facility would place a strain on already overpopulated prisons, and threaten the security of

27

inmates and personnel.  Plaintiffs, at this early stage of
litigation, have not demonstrated any medical problems to warrant
unlimited medical testing, and plaintiffs have admitted that
bottled water has been provided to the inmates when the water has
tested unsuitable for drinking.  Therefore, plaintiffs have not
demonstrated a more compelling interest in this instance to
warrant the emergent relief requested.

    4. *Public Interest*

    Finally, it is always in the public interest to ensure that
any prisoner litigation affecting fundamental liberty interests
comport with the requirements of due process.  Here, however, as
the overall equities do not favor the issuance of a preliminary
injunction, the Court will deny plaintiffs' request for emergent
relief at this time, without prejudice to plaintiffs' right to
renew their preliminary injunction motion if supported by
admissible evidence.

V. <u>CONCLUSION</u>

    For the reasons set forth above, the Complaint will be
dismissed without prejudice as against all defendants, except
George W. Hayman, Acting Commissioner of the NJDOC; James Barber,
NJDOC Director; John Robertshaw, Administrator at MSCF; Robert
Brumbaugh, Chief at MSCF; and Margaret Lebak, State Ombudsman
representative at MSCF, pursuant to 28 U.S.C.
§§ 1915(e)(2)(B)(ii) and 1915A(b)(1), (2).  The Complaint

28

alleging an Eighth Amendment violation in failing to provide plaintiffs with safe, potable water while they are confined at MSCF will be allowed to proceed against defendants, George W. Hayman, Acting Commissioner of the NJDOC; James Barber, NJDOC Director; John Robertshaw, Administrator at MSCF; Robert Brumbaugh, Chief at MSCF; Margaret Lebak, State Ombudsmann representative at MSCF.  Class certification is denied.  Further, the application for emergent relief is denied without prejudice. Finally, the Court will direct the Clerk to provide plaintiffs, Friedland and Lucente, with IFP applications and these plaintiffs will be required to submit their complete IFP applications, with their respective six-month prison account statements, within 30 days, otherwise, these plaintiffs will be deemed withdrawn from the Complaint.   An appropriate order follows.


                                        **s/ Jerome B. Simandle**
                                        JEROME B. SIMANDLE
                                        United States District Judge

Dated:  **December 13, 2006**

29